TARDY (UNITED STATES v.). See Case No. 16,432.

---

## Case No. 13,753.

TARLETON et al. v. MALLORY et al.

[10 Ben. 46.] [1]

District Court, S. D. New York. July, 1878.

SEAMEN'S WAGES—WRECK—TIME OF DISCHARGE.

A steamer went ashore on February 4, 1876. The master did not abandon hope of getting the vessel off till March 10th. Up to February 16th the crew remained on the shore by the vessel, engaged under the master's orders in taking the cargo out and stripping the vessel. On

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

the 16th of February the provisions gave out, and the crew were sent to Nassau, N. P., where they were retained by the master's direction till March 10th, when they were discharged. They were paid wages up till February 4th, and on returning to New York they filed a libel against the owners, claiming to recover wages up to March 10th. The owners defendant, claiming that under section 4526 of the Revised Statutes of the United States, the seamen's right to wages ceased on the wreck of the vessel on February 4th, and that for their subsequent services they would be entitled only to salvage compensation, to be paid out of the proceeds of the wreck. *Held*, that the seamen were bound to continue their services as long as there was any hope of saving the ship; that the master must be held to have the power, as a general rule, to determine whether there is any hope of getting the ship afloat, and until he gives it up, the owners cannot object to paying wages on the ground that there was no chance of saving her; and that the libellants, therefore, were entitled to recover.

[This was a libel for seamen's wages by John R. Tarleton and others against Charles Mallory and others.]

Benedict, Taft & Benedict, for libellants.
Owen & Gray, for defendants.

CHOATE, District Judge. This is a libel in personam against the owners of the steamship Galveston for seamen's wages. The steamship went ashore on the 4th of February, 1876, on a coral reef on the island of Maryguane, on her voyage from New York to Port au Prince and return. The master did not discharge the crew, but under his orders they remained by the steamship, living on the beach till the 16th of February, and during this time they were engaged under his orders in taking the cargo on shore and protecting it, in stripping the ship and taking on shore whatever was taken from the vessel. On the 16th of February they were sent to Nassau by direction of the master, and there remained till the 10th of March, when they were discharged. The reason for sending them to Nassau was that provisions gave out at the place of the wreck. Up to the 10th of March the master had not abandoned all hope of getting the steamship off, and he kept the crew at Nassau in order that, if he got her off, they might go on in her. The crew have been paid up to February 4th. The question is whether they are entitled to their wages to any later time, and if so to what time? Rev. St. § 4526, provides: "In cases where the service of any seaman terminates before the period contemplated in the agreement, by reason of the wreck or loss of the vessel, such seaman shall be entitled to wages for the time of service prior to such termination, but not for any further period."

It is claimed by the defendants, the owners of the steamship, that in this case the service was terminated by the wreck or loss of the vessel on the 4th of February, when she got aground. The statute implies that by the wreck or loss of the vessel the agreement of the seamen is terminated. It does not introduce any new rule as to when the

service will terminate, but refers to the established rule of the maritime law. And the law undoubtedly is, that upon a disaster befalling a ship, as by stranding in this case, the seamen are bound by their contract to stand by her so long as there is any hope of saving the ship or the cargo, and the master may, until such hope is abandoned, command their services, and they are entitled to be paid their wages while thus held by the master after the stranding. And it is wages they are entitled to, and not a salvage compensation out of what may be saved from the wreck, as the defendants claim. Now, although this vessel was in a desperate condition after the 4th of February, the seamen continued to serve in saving the cargo and parts of the ship, and were lawfully kept in readiness to continue the voyage if she should be got afloat. The master must be held to have the power, as a general rule, to determine whether there is any hope of getting the ship afloat, and until he gives it up the owners cannot object to paying the wages on the ground that there was no chance of saving her. The case of The M. M. Caleb [Case No. 9,682], cited by defendants, is not in point. There the ship had actually sunk. It did not admit of any question that she was lost. That necessarily terminated the service of the seamen. The law of the present case is carefully stated in the case of The Warrior, Lush. 476. Decree for libellants, with costs, and reference to compute.